UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD M.C.,

                          Plaintiff,

                                                          6:20-CV-0644
v.                                                        (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ              PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

SOCIAL SECURITY ADMINISTRATION            JESSICA RICHARDS, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I        Special Assistant U.S. Attorney
  Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this action filed by Edward M.C. ("Plaintiff") against the

Commissioner of Social Security Andrew Saul ("Defendant") pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's

motion for judgment on the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set forth below,

Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment

on the pleadings is granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1967, making him 49 years old at his application filing date and 51 years old at the date of the ALJ's decision. (T. 30.)[22]  In his application, Plaintiff alleged that he is disabled due to major depressive disorder, general and social anxiety, back problems, herniated discs in his back and neck, bulging discs, pinched nerves, heart disease, bilateral hip problems, headaches, and panic attacks. (T. 136-37, 286.)

**B.    Procedural History**

Plaintiff applied for Supplemental Security Income on December 21, 2016. (T. 11.)  This application was initially denied on March 15, 2017, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*)  Plaintiff appeared at a hearing before ALJ Paul D. Barker, Jr., on April 2, 2019. (T. 11, 68-135.)  On May 8, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 11-22.)  On May 13, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

**C.    The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 11-22.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application filing date. (T. 13.)  Second, the ALJ found that Plaintiff's degenerative disc disease, depression, and anxiety are severe impairments. (T. 13.)  Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ

---

[22]    The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

considered Listing 1.04, Listing 12.04, and Listing 12.06.  (T. 13-14.)  Fourth, the ALJ found

that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 416.967(b) except with additional
> restrictions. The claimant can lift and carry, push and pull 20
> pounds occasionally and 10 pounds frequently; can stand and walk
> for 6 hours of an 8-hour workday; can sit for 6 hours of an 8-hour
> workday; can occasionally stoop, climb ramps and stairs, balance,
> kneel, crawl, and crouch, and can never climb ladders, ropes, and
> scaffolds. He can frequently reach to the front and sides and
> occasionally reach overhead.  He can understand, remember, and
> carry out simple tasks but not at an assembly line rate; can make
> simple work-related decisions; can have occasional work-related
> interactions with co-workers and supervisors, and rare work
> related interactions with the general public (5% [or] less of an 8-
> hour day); and can have occasional changes in the work setting.

(T. 15.)  Fifth, the ALJ found that Plaintiff was unable to perform his past work as a radiology

aid, emergency medical technician, or warehouse worker.  (T. 20.)  Sixth, the ALJ found that

Plaintiff was able to perform other work in the national economy as an inspector, sorter, and

bench packer.  (T. 21-22.)  The ALJ therefore concluded that Plaintiff was not disabled during

the relevant time period.

> **D.    The Parties' Briefing on Their Motions**
>
> **1.    Plaintiff's Motion for Judgment on the Pleadings**

Generally, in his motion, Plaintiff makes three arguments.  (Dkt. No. 13 [Pl.'s Mem. of

Law].)  First, Plaintiff argues that the ALJ failed to properly apply the law and to give

appropriate weight to the opinions of Donna Sergio, N.P., and Rebecca Friemann, PA-C,

because he failed to treat them as acceptable medical sources.  (*Id.* at 18-20.)  Specifically,

Plaintiff argues that the ALJ failed to properly apply the law by finding that these sources were

not medically acceptable sources because the new regulations effective March 27, 2017 (20

C.F.R. §§ 416.902[a][7] and [a][8]), classify both nurse practitioners and physician's assistants

as acceptable medical sources.  (*Id.*)  Plaintiff argues that his application was filed after March 27, 2017, and thus the ALJ was required to apply these new regulations.  (*Id.*)  However, Plaintiff argues that the applicability of the new regulations does not preclude this Court from finding that the treating physician rule (which requires assessing the relationship between the source and the claimant as a primary factor when determining what weight the opinion's source is entitled to) still applies despite 20 C.F.R. § 404.1527 being replaced by 20 C.F.R. § 404.1520c, because the Second Circuit recognized a version of the treating physician rule before that rule was codified in 20 C.F.R. § 404.1527.  (*Id.*)

Second, Plaintiff argues that the ALJ's findings are not supported by substantial evidence for the following three reasons: (1) the ALJ impermissibly substituted his own lay opinion about the medical evidence and objective testing in that he analyzed and interpreted various MRI and nerve conduction studies without the aid of a medical professional despite the ALJ's lack of medical qualifications to do so, and erred in failing to obtain the services of a medical expert to interpret these medical results; (2) the ALJ erred in "selectively parsing" the MRI reports to accept only those findings that were considered to be mild; and (3) the ALJ applied inconsistent logic when affording limited weight to the State Agency medical consultant and significant weight to consultative examiner Ivan Wolf, M.D., in that he explicitly rejected the State Agency medical consultant's opinion because it was rendered before much of the evidence in the record, but he relied heavily on Dr. Wolf's opinion despite the fact that it was rendered even earlier than the State Agency medical consultant's opinion.  (*Id.* at 21-23.)

Third, Plaintiff argues that, had the ALJ made a proper determination about all of the medical evidence, he would have found Plaintiff was necessarily limited to sedentary work and

thus Plaintiff would have been found disabled under the Social Security Administration's medical-vocational rules.  (*Id.* at 23.)

### 2.   Defendant's Motion for Judgment on the Pleadings

Generally, in his motion, Defendant makes four arguments.  (Dkt. No. 14 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ properly weighed the opinions from Nurse Practitioner Sergio and Physician's Assistant Friemann because (a) Plaintiff's application was filed on December 21, 2016, and is therefore subject to the older regulations, under which these sources are not medically acceptable sources, and the ALJ therefore appropriately found that they were not medically acceptable sources, and (b) the ALJ appropriately explained that the severe limitations these sources opined were inconsistent with the medical evidence, which, the ALJ found, showed relatively mild limitations.  (*Id.* at 9-13.)

Second, Defendant argues that the ALJ properly weighed Dr. Wolf's opinion and that there is no inconsistency between the ALJ's logic for accepting Dr. Wolf's opinion while rejecting the opinion of the State Agency medical consultant because the former addresses physical conditions, while the latter addresses mental conditions, and thus there was a justification for the difference in the ALJ's analysis based on the ALJ's conclusion that Plaintiff's mental impairments worsened in severity but his physical impairments did not significantly or meaningfully worsen during the relevant time.  (*Id.* at 14-15.)

Third, Defendant argues that the RFC is supported by substantial evidence, including Dr. Wolf's opinion, the generally stable and mild findings in the treatment record, and other medical evidence, including Plaintiff's complaints of sensation abnormalities in his upper extremities and issues with reaching related to his cervical spine.  (*Id.* at 15-17.)

Fourth, Defendant argues that the ALJ properly evaluated the objective medical testing without a medical expert because he did not merely interpret them based on his own lay opinion, but rather relied on the context of the medical record as a whole. (*Id.* at 17.) Specifically, Defendant argues that the ALJ relied on the treatment notes from Plaintiff's providers, who discussed the MRI and other medical data in those treatment notes, but did not note that these findings required any change in his treatment plan or activity level, and that Dr. Wolf's opinion was also based in part on his interpretation of x-rays of Plaintiff's hips and lower spine. (*Id.*) Thus, the ALJ did not interpret these objective medical findings on his own or substitute his lay opinion for that of medical sources. (*Id.*) Defendant also argues that the ALJ did not use the objective testing itself to formulate the RFC, but rather to show the contrast between the relatively mild findings in that testing and the significantly restrictive opinions of Practitioner Sergio and Physician's Assistant Friemann. (*Id.*)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the

> [Commissioner] next considers whether the claimant has a
> "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant suffers
> such an impairment, the third inquiry is whether, based solely on
> medical evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant
> who is afflicted with a "listed" impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is
> unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant
> bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

After carefully considering whether the ALJ's decision is supported by substantial

evidence and consistent with applicable legal standards, the Court answers this question in the

affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 [Def.'s

Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that, contrary to Plaintiff's argument, the record

indicates that his application in this case was filed on December 21, 2016,[1] before the changes to

the regulation became effective on March 27, 2017.  (T. 11, 136, 148.)  Because the new

regulations do not apply to claims that were filed before that effective date, Plaintiff is incorrect

---

[1]      A document entitled "Application Summary for Supplemental Security Income"
indicates that Plaintiff applied for Supplemental Security Income on January 10, 2017.  (T. 260.)
However, this date is still before the date on which the new regulations became effective.

that the ALJ was required to analyze his claim under the standards of the new regulations. As a result, the Court rejects Plaintiff's arguments that the ALJ failed to apply the correct legal standard or that he erred in finding that Nurse Practitioner Sergio and Physician's Assistant Friemann were not acceptable medical sources as that term is defined by the applicable regulations. Additionally, because the new regulations do not apply in this case, the Court declines to make any finding regarding whether the treating physician rule remains applicable in the Second Circuit despite the new regulations.

Plaintiff next argues that the ALJ erred in relying on his own lay opinion and inappropriately interpreting raw medical data in the form of MRIs and other objective medical testing results when determining the RFC. However, in finding Plaintiff capable of light work, the ALJ did not merely rely on his own assessment of the record, but also on the opinion of Dr. Wolf. In particular, Dr. Wolf opined that Plaintiff was "mildly limited in his ability to squat and bend, lift and carry." (T. 558.) A mild limitation in the abilities to lift and carry have been considered to be consistent with an ability to perform at least light work. *See Dietrich v. Comm'r of Soc. Sec.*, 15-CV-1219, 2016 WL 7157154, at *5 (N.D.N.Y. Nov. 15, 2016) (Carter, M.J.) (finding that both "mild" and "moderate" limitations in the abilities to lift, carry, push, and pull would not preclude a Plaintiff from performing the exertional demands of light work), report-recommendation adopted by 2016 WL 7156556 (N.D.N.Y. Dec. 7, 2016) (Suddaby, C.J.); *Richardson v. Colvin*, 15-CV-6276, 2016 WL 3179902, at *8 (W.D.N.Y. June 8, 2016) (noting that "[m]any courts have held that . . . mild or even moderate limitations [in lifting and carrying] are consistent with the ability to perform a full range of light work") (collecting cases); *Colon-Sanchez v. Comm'r of Soc. Sec.*, 14-CV-0705, 2016 WL 638816, at *7 (N.D.N.Y. Jan. 25, 2016) (Peebles, M.J.) (finding RFC for light work supported by the opinion of the consultative

9

examiner finding that plaintiff had only mild-to-moderate limitations in her ability to lift, carry, push and pull), report-recommendation adopted by 2016 WL 632548 (N.D.N.Y. Feb. 17, 2016) (McAvoy, J.). Additionally, although Dr. Wolf's opinion does not explicitly mention Plaintiff's abilities to stand, walk, or sit, his opinion implicitly indicates that he found no limitations in those areas. (T. 558.) As a result, Dr. Wolf's opinion provides support for the ALJ's opinion that Plaintiff could perform work at the light exertional level.

Despite Dr. Wolf's opinion in support of the RFC finding, Plaintiff argues that the ALJ's finding was based on his lay opinion and interpretation of medical data because he "asserts that the findings in the various MRI and nerve conduction study reports do not support a level of severity consistent with the opinions of treating sources." (Dkt. No. 13, at 21 [Pl.'s Mem. of Law].) Plaintiff further argues that, "[i]n order to come to this conclusion, the ALJ himself had to interpret the severity in the MRI findings and nerve conduction test results." (*Id.*) However, Plaintiff's arguments are unpersuasive for two reasons.

First, whether or not the ALJ interpreted the MRIs and other medical testing, that testing was not the only evidence the ALJ relied on when finding that the opinions of Nurse Practitioner Sergio and Physician's Assistant Friemann were inconsistent with the medical evidence; rather, the ALJ's decision clearly indicates that the ALJ also considered the objective findings on examinations, which generally showed symptoms including decreased range-of-motion in his cervical spine, positive Spurling's test on the left, decreased sensation in his cervical spine dermatomes primarily on the left, lumbosacral tenderness, decreased range-of-motion in his lumbar spine, decreased lower extremity reflexes, decreased sensation in his left lumbar dermatomes, and positive bilateral straight leg raising signs. (*See e.g.*, T. 365, 476-77, 569-71, 578-80, 583-85, 824-25, 820-30, 834-35, 845, 860-61, 918-919, 924-25, 930-31.) The ALJ's

interpretation of these objective findings and observations as being inconsistent with the severely restrictive opinions of Nurse Practitioner Sergio[2] and Physician's Assistant Friemann[3] (and as being supportive of light work as expressed in the RFC) is not unreasonable, and these findings therefore provide a substantial basis for his findings, in addition to the opinion of Dr. Wolf.

Second, the ALJ did not necessarily need to rely on his own interpretation of the objective imaging evidence because there is a clear indication in the treatment notes that medical sources considered and interpreted such objective evidence when rendering an opinion (in the case of Dr. Wolf) or in determining diagnoses and treatment plan (in the case of the treating and examining medical providers).  Notably, at least one of Plaintiff's treating sources (Nurse Practitioner Sergio, specifically, and others in her practice group) included the results of the various spinal MRIs and other testing in most of the treatment notes, and yet their treatment plan and recommendations generally consisted of a course of spinal injections (which Plaintiff reported provided significant pain relief), maintenance with hydrocodone (which Plaintiff himself reported he took only very infrequently), and instructions to "continue his current level of activities as tolerable."  (*See e.g.*, T. 825-26, 829-30, 835-36, 843-44, 851-52, 856-57, 862-63, 919-20, 925-26, 931-32.)  Activities he reported to physicians included helping his mother,

---

[2]     On February 15, 2019, Nurse Practitioner Sergio opined that Plaintiff was able to lift and carry 5 pounds occasionally and 5 pounds frequently, stand or walk 10 minutes or less at once, stand or walk 1 hour or less, sit for 10 minutes or less at one time, sit 1 hour total, occasionally climb, balance, kneel, and stoop, and never crouch or crawl; she also opined that he had severe limitations in reaching and fingering, mild limitations in handling and feeling, needed to recline during the workday and to elevate his feet every 4 hours, and that pain and fatigue would cause him to be off-task 50% of the time and absent more than 4 days per month.  (T. 870-71.)

[3]     On August 3, 2017, Physician's Assistant Friemann opined that Plaintiff was able to lift and carry 10 pounds occasionally and 5 pounds frequently, stand or walk 2 hours or less, sit for 20 minutes or less at one time, sit 2 hours total, occasionally climb, balance and kneel, and never crouch, crawl or stoop; she also opined that he had severe limitations in reaching, mild limitations in handling, fingering and feeling, needed to recline during the workday and to elevate his feet every 3-4 hours, and that pain and fatigue would cause him to be off-task 50% of the time and absent more than 4 days per month.  (T. 865-66.)

shoveling and/or snow plowing when he could, fixing things around the house, driving his mother around, and a trip to Myrtle Beach for a month in early 2019. (*See e.g.*, T. 813, 916.) Thus, the ALJ did not rely merely on the objective test results themselves, but the treating source's actions based on their review and interpretation of those results. Additionally, because the ALJ relied on the opinion of Dr. Wolf and the objective medical evidence (which included review of the objective testing by medical sources), and even (to some degree, particularly as to reaching abilities) Plaintiff's own subjective reports of physical limitations when formulating the RFC, there was no apparent basis for the ALJ to obtain a medical expert, and, nevertheless, the decision to call a medical expert is entirely within the discretion of the ALJ. *See Jeffrey C. v. Berryhill*, 18-CV-0505, 2019 WL 3361256, at *5-6 (N.D.N.Y. May 22, 2019) (Stewart, M.J.) (finding no legal duty to call a medical expert because, under the regulations, "it is within the ALJ's discretion whether to call a medical expert"), report-recommendation adopted by 2019 WL 2482087 (N.D.N.Y. June 14, 2019) (Scullin, J.).

Similarly, Plaintiff's argument that the ALJ's rationale for rejecting the opinion of the State Agency medical consultant was inconsistent with his acceptance of Dr. Wolf's opinion is unavailing. On March 8, 2017, State Agency medical consultant Dr. Austin-Small opined that Plaintiff's psychiatric impairments were not severe and imposed only mild limitations. (T. 140-41.) The ALJ afforded limited weight to this opinion because more recent treatment records and Plaintiff's hearing testimony (none of which Dr. Austin-Small had the opportunity to consider) merited finding Plaintiff to be more mentally limited than opined by Dr. Austin-Smith. (T. 18.) By contrast, the ALJ afforded significant weight to the February 23, 2017, opinion from Dr. Wolf regarding Plaintiff's physical functioning because it was supported by his own examination and consistent with the relatively mildly findings on physical examinations, the imaging studies,

the nerve conduction studies, and Plaintiff's own subjective reports of improvement in his physical symptoms with treatment.  (T. 18-19.)

The ALJ's logic for the differing weights afforded to these opinions is not inconsistent. Contrary to Plaintiff's implication, the ALJ did not reject Dr. Austin-Small's opinion merely because he did not have an opportunity to consider newer evidence in the record.  Rather, he rejected it because it was not consistent with that newer evidence, which showed greater limitations than those opined by Dr. Austin-Small.  By contrast, although Dr. Wolf's opinion was also rendered before the majority of the evidence in the record, the ALJ found that his opinion was consistent with that newer evidence.  Thus, it is the consistency with the later evidence (and evidence as a whole) rather than the timing of the opinion that was the rationale for the ALJ's reliance (or lack of reliance) on either of these opinions.  As a result, there is nothing inconsistent in the way the ALJ weighed these two opinions.

Lastly, although Plaintiff did not specifically argue that the ALJ's findings as to Plaintiff's mental functioning were erroneous or unsupported, the Court has reviewed all the evidence in the record related to those impairments and found that the ALJ's finding regarding mental functioning is supported by substantial evidence.  Specifically, although the record shows that Plaintiff suffers from serious mental health symptoms, those symptoms are not always at a constant level and he receives some benefit from treatment and medication.  The significant mental limitations in the RFC reasonably address these symptoms based on the evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 19, 2021
         Syracuse, New York


Hon. Glenn T. Suddaby
Chief U.S. District Judge